IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**JACOB HEATH VANSLYKE, #189698**                                    **PLAINTIFF**

v.                                                       CIVIL NO. 5:22-cv-00013-DCB-LGI

**CAPTAIN PHIL TAYLOR,
MANAGEMENT AND TRAINING
CORPORATION (MTC),
LIEUTENANT CARRIE HUNT,
UNIT MANAGER VANESSA TURNER,
and OFFICER SHUNLEKEE
PENNINGTON**                                                       **DEFENDANTS**

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendants' Motion [27] for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Motion [27] for Summary Judgment be granted and Plaintiff's claims against Defendants be dismissed without prejudice.

**I.  BACKGROUND**

*Pro se* Plaintiff Jacob Heath VanSlyke ("Plaintiff") is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), incarcerated at the Wilkinson County Correctional Facility in Woodville, Mississippi. Plaintiff is proceeding *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA"), and he brings this suit pursuant to 42 U.S.C. § 1983. *See* Compl. [1]; Order [8]. The named Defendants are Phil Taylor, Captain at Wilkinson County Correctional Facility ("WCCF"); Management and Training Corporation (MTC), the private

prison-management corporation that operates WCCF; Carrie Hunt, Lieutenant at WCCF; Vanessa Turner, Unit Manager at WCCF; and Shunlekee Pennington, Disciplinary Officer at WCCF. *See* Order [14] (replacing Defendant MTC/WCCF with MTC); Order [9] (adding Defendants Turner, Hunt, and Pennington).

Plaintiff complains about the conditions of his confinement at WCCF. In an effort to discern Plaintiff's claims, the Court entered two Orders directing Plaintiff to respond by detailing his claims with specificity, in accordance with the Court's orders. *See* Orders [12], [10]. Plaintiff's claims presented in his Complaint [1], Attachment [4], and Responses [11], [13] are summarized below.

Plaintiff claims that on September 21, 2021, Defendant Hunt closed the "tray flap" on his cell door and sprayed "tear gas (mace) into the cell sadistically and maliciously causing [him] to be unable to breath [*sic*]." Attach. [4] at 1. Plaintiff further alleges that, Defendant "Turner then sadistically and maliciously wrote me a [ ] Rule Violation Report" (RVR) "saying I spit in her face and assaulted her." *Id*. Plaintiff claims he was "brought several RVR[]s" but "was never given copies" and was denied a disciplinary hearing and "denied the right to appeal the disciplinary decision" by Defendant Pennington. *Id*. Plaintiff states that he wrote grievances "about all the RVR[]s but never got a response to know if they were expunged by appeal or not." Resp. [11] at 1.

Plaintiff also complains that on December 5, 2021, Defendant Taylor placed him in a cell without any property or personal hygiene items. Compl. [1] at 5. Plaintiff claims he remained in this cell until December 9, 2021, without toilet tissue,

soap, a toothbrush, toothpaste, blankets, or a mattress. *Id.* Plaintiff complains that he "was forced to sleep in a very cold cell on a steel bunk for 4 days straight." *Id.* Plaintiff claims he "never" received "a detention notice or rule violation report" "informing him [of] what he was being punished for or an opportunity to appeal this cruel and unusual punishment." Resp. [13] at 1. Plaintiff asserts that MTC violated his constitutional rights by "allowing" their officers to subject him to cruel and unusual punishment and violate his due process rights. *Id.* As relief, Plaintiff seeks monetary damages. Compl. [1] at 5.

On February 23, 2023, Defendants filed a Motion for Summary Judgment, arguing Plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit. Plaintiff did not file a response, and the time for doing so has expired.

## II. DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences are construed in the light most favorable to the non-moving party. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The Court must also "refrain from making credibility determinations or weighing the evidence." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citation omitted).

Summary judgment is routinely utilized to decide if pre-filing exhaustion is completed by prisoners in conditions-of-confinement cases. *See, e.g.*, *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (finding "there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate"); *Dillon*, 596 F.3d at 272 ("[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."). If defendants meet their "initial summary judgment burden of showing that there [is] no genuine issue of material fact regarding exhaustion" and the prisoner-plaintiff "fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion, the district court [is] required to dismiss his claims." *Jackson v. Hall*, 763 F. App'x 376, 376-77 (5th Cir. 2019) (affirming summary judgment dismissal for failure to exhaust administrative remedies, noting that district court did not err by ruling on prisoner's claims in the context of summary judgment without allowing discovery or conducting an evidentiary hearing).

B.   <u>The PLRA's Exhaustion Requirement</u>

The PLRA provides that an inmate may not sue under federal law until exhausting available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement (1) "give[s] an agency an opportunity to correct its own mistakes . . . before it is haled into federal court" and (2) it permits "claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal

court." *Johnson v. Ford*, 361 F. App'x 752, 755 (5th Cir. 2008) (internal quotation marks and citations omitted) (discussing purposes of § 1997e(a)).

Exhaustion under the PLRA is an affirmative defense, and the burden is on Defendants to demonstrate that Plaintiff failed to exhaust available administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). To meet their burden, Defendants "must establish" without doubt "all of the essential elements of the defense of exhaustion." *Wilson*, 776 F.3d at 299 (citation omitted).

The PLRA dictates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules– rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts*, 877 F.3d at 582 (quoting *Jones*, 549 U.S. at 218). The exhaustion requirement is satisfied only if the prisoner pursues the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). A prisoner must properly complete the exhaustion of available administrative remedies prior to filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("Pre-filing exhaustion is mandatory").

C.  MDOC's Administrative Remedy Program

Initially, the Court notes that MDOC's Administrative Remedy Program ("ARP") is detailed in Chapter VIII of the Inmate Handbook. Defendants filed a copy of the Inmate Handbook as Exhibit "D" [27-4] to their Motion [27] for Summary Judgment. The Court also takes judicial notice of the Inmate Handbook posted on MDOC's website. *See Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022) (noting

district court properly took judicial notice of MDOC's Inmate Handbook as posted on its website) (citations omitted).[1]

MDOC employs a two-step ARP process through which an inmate may present grievances relating to his incarceration. *See Jackson*, 763 F. App'x at 377. To utilize the ARP,

> [a]n inmate must file a grievance within 30 days of the complained of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018).

D.  <u>Plaintiff's Filings with the Administrative Remedy Program</u>

In support of their Motion for Summary Judgment, Defendants submit a declaration signed under penalty of perjury by Janice Williams, the ARP Coordinator at WCCF. *See* [27-7] at 1-5. Williams states that Plaintiff filed several grievances through the ARP at the prison since September of 2021. *Id.* Plaintiff's relevant grievances are detailed below.

1. <u>WCCF 21-761, OT #48, and OT #57</u>

The ARP records demonstrate that Plaintiff submitted two grievances that he later dismissed or withdrew from the program prior to completion. On September 22, 2021, Plaintiff submitted a grievance identified as WCCF 21-761, which initially was placed on backlog because of a pending grievance. *See* [27-5] at 3; *see also Wilson*, 776 F.3d at 300 (explaining "MDOC's backlogging procedure"). However, on

---

[1] https://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook, aspx.

November 12, 2021, this grievance was removed from backlog and accepted into the ARP process. [27-5] at 4. In this grievance, Plaintiff asserted claims against Defendant Turner and Unit Commander Williams related to the mace spraying incident, his movement between pods at the prison, and a failure to replace his stolen personal property. *Id*. at 1.

On October 15, 2021, Plaintiff submitted a grievance identified as OT #48. *See* [27-5] at 9. In this grievance, Plaintiff attempts to "[a]ppeal the recommen[d]ed administrative decision for [l]ong-[t]erm segregation status." *Id*. On November 5, 2021, Grievance Coordinator Williams sent a letter to Plaintiff advising him that this grievance would be "set aside for handling in due course" or placed on backlog. [27-5] at 11, 13 (letter). The letter also stated that if Plaintiff wishes to have this grievance "handled now through the Administrative Remedy Program, [Plaintiff] may withdraw (in writing) all pending ARP's." *Id*. at 13.

On November 16, 2021, Plaintiff submitted a grievance complaining about his housing location and claiming he fears for his safety on "K-pod" because he is "segregated with inmates who constantly beat and make noise, yelling, and flood[ing] the zone with toilets, set fires and threaten staff." [27-5] at 18. Plaintiff asked to be transferred "off of K-pod to H-pod" and "segregated with the rest of the vicelords." *Id*. This grievance is identified as OT #57 and originally it was placed on backlog. *Id*. at 20. On November 22, 2021, Plaintiff requested–in writing–that all pending grievances be dismissed so grievance OT #57 could immediately proceed through the ARP process. [27-5] at 19 ("Dismiss all pending ARP's please and review this one.").

As a result, grievances WCCF 21-761 and OT #48 were dismissed at Plaintiff's direction. The record does not reveal the final resolution of grievance OT #57.

　　2. <u>WCCF 21-730, WCCF 21-758 and WCCF 22-18</u>

Plaintiff submitted three grievances that were rejected by MDOC's statewide ARP Director, Richard Pennington. [27-7] at 3–4. In grievance WCCF 21-730, Plaintiff alleges excessive force regarding the mace spraying incident on September 21, 2021, against Defendant Turner, Defendant Hunt, and an Officer Williams. [27-5] at 5. In the "relief sought" section of Plaintiff's grievance, he writes, "I am seeking to be granted leave to pursue [j]udicial [r]eview by a 42 U.S.C. § 1983 civil lawsuit regarding this cruel and unusual punishment I am undergoing so that I may pursue criminal charges and claims through higher remedies." *Id*. In grievance WCCF 21-758, Plaintiff alleges due process violations in relation to rule violation reports and his placement in long-term segregation. [27-5] at 14. As relief sought, Plaintiff writes, "I am seeking a [j]udicial [r]eview on my living conditions since my constitutional rights are being violated under the care of Management and Training Corporation so that I may pursue a civil lawsuit in court." *Id*.

In December of 2021, Plaintiff submitted grievance WCCF 22-18, complaining about his placement in segregation on December 5, 2021, without his personal property, a mattress, a blanket, a toothbrush, or a pillow. [27-6] at 2. As relief, Plaintiff requested that $2,500.00 be added to his inmate account. *Id*.

On October 25, 2021, Pennington sent Plaintiff a notice that grievance WCCF 21-730 was rejected because the relief was "[b]eyond the power of ARP to grant." [27-

7] at 3; [27-5] at 7.  On November 8, 2021, a similar rejection notice issued for grievance WCCF 21-758.  [27-7] at 4; [27-5] at 17.  Pennington also rejected grievance WCCF 22-18, on January 12, 2022, as "[b]eyond the power of ARP to grant."  [27-6] at 1.

Pursuant to MDOC policy, a grievance may be rejected if the relief sought is beyond the power of MDOC to grant.  [27-3] at 3; [27-4] at 17.  In accord with MDOC policy, Plaintiff had five days to submit a corrected grievance.  [27-3] at 4; [27-4] at 18.  On October 26, 2021, Plaintiff signed a receipt that he received the rejection notice for grievance WCCF 21-730.  [27-5] at 8.  Likewise, on November 10, 2021, Plaintiff signed a receipt that he received the rejection notice for grievance WCCF 21-758.  [27-5] at 16.  Lastly, on January 13, 2022, Plaintiff signed a receipt that he received the rejection notice for grievance WCCF 22-18.  [27-6] at 3. The record shows that Plaintiff did not submit any corrected grievances for rejected grievances WCCF 21-730, WCCF 21-758, and WCCF 22-18.  [27-7] at 3–4.

   3. WCCF 22-629

On May 31, 2022, Plaintiff submitted a grievance identified as WCCF 22-629.  [27-7] at 4; [27-6] at 5.  In this grievance, Plaintiff asserts complaints regarding rule violation reports, the disciplinary process, and his housing in long-term segregation.  [27-6] at 5.  As relief, Plaintiff seeks placement in general population and an investigation into his placement in segregation.  *Id*.  A first step response issued on November 1, 2022, and Plaintiff appealed to step two on November 10, 2022.  *Id*. at

6. The second step response denying this grievance issued on November 18, 2022. *Id*. at 9.

E. <u>Arguments of the Parties</u>

Defendants maintain that Plaintiff failed to complete the ARP process for any of his grievances related to the claims in this lawsuit prior to filing this action. For these reasons, Defendants argue they are entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies. As stated above, Plaintiff did not file a response to the Motion for Summary Judgment, and the time for doing so has expired.

F. <u>Analysis</u>

After review of Plaintiff's ARP records, it is clear that Plaintiff did not complete MDOC's ARP process for the claims he presents in this civil action before filing his Complaint [1]. Plaintiff may not simply initiate the grievance process, but he must complete the process "in accordance with the applicable rules . . . as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Plaintiff cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Id*. at 84. Simply put, exhaustion is not complete until Plaintiff pursues the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301.

Plaintiff's dismissal or withdrawal of grievances WCCF 21-761 and OT #48 prior to conclusion of the ARP process means these grievances are incomplete, and the claims presented therein are unexhausted. *Id*. (finding "MDOC's backlogging

procedure" does not "abrogate § 1997e's exhaustion requirement"); *see also Ewing v. Peabody*, No. 1:16-cv-46-HSO-JCG, 2017 WL 2426869 (S.D. Miss. June 5, 2017) (granting summary judgment for failure to exhaust finding MDOC inmate's grievance "in backlog" at time of filing § 1983 case is unexhausted). As stated above, Plaintiff dismissed grievances WCCF 21-761 and OT #48 to immediately pursue grievance OT #57. Although the record does not reveal the final resolution of grievance OT #57, this grievance only concerned Plaintiff's allegations regarding his safety from actions of other inmates while housed on K-pod. *See* [27-5] at 18. The allegations presented within this grievance, even if pursued to completion of the ARP process, fail to provide defendants with adequate notice of the claims asserted against them in this civil action.

Likewise, the fact that Plaintiff's grievances, identified as WCCF 21-730, WCCF 21-758, and WCCF 22-18 were rejected because the relief sought was "beyond the power of the ARP to grant" does not absolve Plaintiff of his duty to complete the process. [27-4] at 17. Even if the relief a prisoner-plaintiff seeks cannot be granted by the administrative remedy process, he must complete the process before filing suit. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (finding "Congress mandated exhaustion" by passage of the PLRA "regardless of the relief offered through administrative procedures"); *Lewis v. Doe, I*, 840 F. App'x 784, 785 (5th Cir. 2021) (finding exhaustion was not excused because MDOC ARP could not award the requested relief of monetary damages to Plaintiff). Plaintiff's failure to submit corrected grievances

11

means the claims presented in the WCCF 21-730, WCCF 21-758, and WCCF 22-18 grievances are unexhausted.

Finally, Plaintiff did not initiate or complete his grievance identified as WCCF 22-629 prior to filing this lawsuit on March 7, 2022. Plaintiff filed this grievance on May 31, 2022, and a second step response issued on November 18, 2022. "Exhaustion must be completed before suit; it may not be excused if it occurs while the suit is pending." *Wheater*, 719 F. App'x at 369 (citing *Gonzalez*, 702 F.3d at 788). Plaintiff's "later grievance[] . . . pursued to conclusion do[es] not establish that the exhaustion requirement was satisfied before filing suit" as required by the PLRA. *Boyd v. Cullom*, No. 20-60327, 2022 WL 1115139, at *1 (5th Cir. Apr. 14, 2022) (affirming summary judgment dismissing prisoner's § 1983 complaint for failure to exhaust).

In conclusion, "[p]re-filing exhaustion is mandatory, and [this] case must be dismissed if available administrative remedies [are] not exhausted." *Gonzalez*, 702 F.3d at 788; *Ross v. Blake*, 578 U.S. 632, 639 (2016) (noting PLRA exhaustion requirement is mandatory, "foreclosing judicial discretion"). Because Plaintiff failed to exhaust his administrative remedies prior to filing this case, dismissal is required.

### III. RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that:

1. Defendants' Motion [27] for Summary Judgment be GRANTED;

2. This action be dismissed without prejudice; and

3. A final judgment be entered as the adoption of this Report and Recommendation will dispose of all the claims against all Defendants.

## IV. NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 16th day of May, 2023.

s/ *LaKeysha Greer Isaac*
UNITED STATES MAGISTRATE JUDGE